IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br>vs.<br><br>BRITTNEY JEROME HOUSTON,<br><br>                      Defendant. | FINDINGS OF FACT,<br>CONCLUSIONS OF LAW,<br>AND ORDER<br><br>Case No. 2:09CR680 DAK |

This matter is before the court on Defendant Brittney Jerome Houston Motion to Suppress. An evidentiary hearing on the motion was held on February 26, 2010. After briefing by the parties, closing arguments were heard on April 9, 2010. At the hearings, Defendant was represented by Mark J. Gregersen, and the United States was represented by Eric G. Benson. Before oral argument, the court carefully considered all pleadings, memoranda, and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court renders the following Findings of Fact, Conclusions of Law, and Order.

**FINDINGS OF FACT**

The government stipulates that the conversation between Agent Dunn and Defendant on August 26, 2009 was an interrogation and that Defendant was in custody. Therefore, the only issue to be resolved is whether Defendant's post-*Miranda* admissions were the product of improper coercion.

FBI Special Agent Daniel Dunn and other officers were investigating a slew of pharmacy robberies in the Salt Lake Valley in late 2008 and early 2009. Eventually their investigation led to the arrest of Defendant in August 2009. After Defendant was taken into custody, he was interviewed in a room at the Cottonwood Heights Police Department by Agent Dunn and Detective Dan Bartlett from the Cottonwood Heights Police Department. Detective Bartlett commenced the interview by apprising Defendant of his *Miranda* rights. Agent Dunn was dressed in casual clothes and Detective Bartlett wore a shirt with a police logo on it. Both officers were armed, although neither brandished their firearms during the interview.

After being informed of his rights, Defendant waived them and agreed to speak with the officers. At no time during the interview did Defendant ask for an attorney. Initially, Defendant denied being involved in the pharmacy robberies, but he said he was aware that his codefendants in the case–Mark, Nicole and Shawn Dubarry–were involved.

After further questioning, Defendant admitted that he had driven his truck through Rite Aid parking lots on August 22 and 23, 2009, in order to scope them out.[1] He said that, on August 22, after scoping out the Cottonwood Heights Rite Aid pharmacy, he called the Dubarrys and informed them not to do the robbery. Then, he stated, he saw two people, whom he believed to be Shawn [Dubarry] and Jesse Kirby enter the Rite Aid to rob the pharmacy. At that point, Defendant stated that he drove away from the location and later returned to the hotel where he met with the Dubarrys.

He also told the detectives that, on August 23, he drove his truck through the South Salt

---

[1] The August 22 incident involved a Rite Aid pharmacy in Cottonwood Heights, Utah, and the incident on August 23 invovved a Rite Aid in South Salt Lake, Utah.

Lake Rite Aid parking lot, and that he told the others not to do the robbery. He stated that he then drove away prior to seeing the robbers enter the store. He stated that he returned to a nearby hotel and eventually met up with his co-defendants and received a few of the OxyContin pills from the robbery.

Agent Dunn testified that, at this point during the interview, he did not believe that Defendant was being entirely truthful with him based upon other information that Dunn had developed during the course of the investigation. Specifically, based on other subject interviews, witness interviews, and having reviewed the surveillance video, Agent Dunn believed that Defendant had taken a more active role in the August 22 and 23 robberies and that he had even participated in a Rite-Aid pharmacy robbery in July.

Agent Dunn confronted Defendant about some of the gaps in his story. Eventually Defendant admitted to being a "lookout driver" for the two robberies on August 22 and 23. Defendant also admitted to certain involvement with the other Rite Aid robbery, which occurred on July 13 in South Salt Lake, Utah. Defendant said that the original plan was for him to go into the pharmacy in South Salt Lake on July 13 with his co-defendant Shawn Dubarry, but at the last minute he changed his mind, or "pussed out" in his words. Instead, he claimed, he went back to his truck to act as a getaway driver.

At that point, Agent Dunn informed Defendant that the officers had surveillance video from the July 13 incident, and that Defendant's story still didn't add up. Dunn continued to inform Defendant that it would be in his best interest to be completely truthful with the officers. Dunn told him that if he wasn't completely truthful, the officers would not be in a position to inform the prosecutor that Defendant had accepted responsibility. Agent Dunn

explained how potential sentences work in the federal system for robberies where a gun is brandished. " I also told him, based off of my experience, I had been working with these serial robberies quite a bit, I had a few cases even here in this district, where individuals were charged with multiple armed robberies, multiple gun charges, and my experience with those cases when an individual is, you know, looking at these charges, and I explained to [Defendant] how the 924(c) minimum mandatories worked." Agent Dunn also explained to him that "what I do after I interview a subject in one of these robberies, I then go and I talk to the prosecutor and I have a couple of things I can do. I can tell the prosecutor that the interviewee cooperated for what they had done, accepted responsibility, and that in my experience that can help the subject get a lesser sentence."

During the interview, Agent Dunn never presented Defendant with alternative sentencing scenarios depending on his confession. Dunn did, however, inform Defendant about minimum mandatory sentences in the federal system and how they could apply in his case. Specifically, Dunn told him, "Three gun charges, that's a minimum mandatory of 57 years in prison. You're a young guy, okay, you don't need to serve 57 years in prison. I don't think you're a bad person and deserve to serve 57 years in prison. You made some mistakes, you were pressured into making these mistakes. You'll have to pay the consequences, but it's the difference between a couple of years and 57 years. But the only way that we can help you, I mean out of respect I'm letting you see what you face so you can make a wise decision, because this affects the rest of your life. Which one do you want to face?" Even after hearing these statements from Dunn, however, Defendant still maintained that he did not actually enter the Rite Aid pharmacy on July 13 with Shawn Dubarry.

Dunn also testified that during the interview, which lasted approximately one hour, the temperature and the lighting in the interview room were comfortable, the officers never invaded Defendant's personal space, and that Defendant was provided with a bottle of water. Defendant was also allowed to use the restroom twice, and, midway through the interview, the officers left Defendant in the room by himself so he could think about the situation on his own. The officers never raised their voices or physically threatened Defendant during the interview. Furthermore, Defendant appeared healthy and responsive throughout the interview.[2]

At the hearing, Defendant testified that he assumed that Agent Dunn was providing him with legal advice during the interview, and that Agent's Dunn's legal representations caused him to continue speaking with the officers during the interview. Defendant also believed that Agent Dunn's statements amounted to a promise of leniency. Defendant is twenty-eight (28) years old, he has an associate's degree from Salt Lake Community College, and he spent a year studying business management at the University of Utah. Additionally, Defendant spent twelve (12) years working for Caliber Homes and eventually was made a part owner of the business. Defendant testified that he did waive his right to an attorney after he received his *Miranda* warnings, but thereafter he assumed that Agent Dunn was giving him legal advice.

## CONCLUSIONS OF LAW

Defendant's statements during the interview were made voluntarily. In evaluating the voluntariness of a confession, the court considers whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution. *United States v. Erving L.,* 147 F.3d 1240, 1248 (10th

---

[2] The entire interview was memorialized onto a videotape.

Cir. 1998) (*citing Miller v. Fenton,* 474 U.S. 104, 112 (1985)). The government bears the burden of showing, by a preponderance of the evidence, that a confession is voluntary. *Uniited States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006). The test is whether, considering the totality of the circumstances, the government obtained the statements by physical or psychological coercion or by improper inducement so that the suspect's will was overborne: "Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne run afoul of the Fifth Amendment and are inadmissible at trial as evidence of guilt." *United States v. Glover,* 104 F.3d 1570, 1579 (10th Cir. 1997); *see also Lopez*, 437 F.3d at 1063. In considering whether a particular confession is coerced, the court considers the following factors: (1) age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment. *Id.* No single factor is determinative. *Lopez*, 437 F.3d at 1063.

In this case, Defendant is a twenty-eight-year-old adult. He has an associate's degree from Salt Lake Community College, has attended some business classes at the University of Utah, and has been a part owner in a residential construction company. No evidence was presented during the evidentiary hearing that he lacks intelligence or suffers from a mental disability. While Defendant was detained during the interview, the interview lasted approximately one hour, the questioning remained calm throughout, and the officers never raised their voices. In addition, the officers advised Defendant of his *Miranda* rights, which he waived. Finally, no physical punishment or coercion was involved. Defendant was never threatened, nor were any firearms brandished at any time. "[C]oercive police activity is a necessary predicate to

the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Defendant contends that his statements became involuntary because Agent Dunn used a promise of leniency. Generally speaking, promises of leniency do not violate the Fifth Amendment's prohibition of coercion. *See, e.g.*, *United States v. Dowell*, 430 F.3d 1100, 1108 (confession of third party voluntary even though federal agents repeatedly contacted third party and promised to "go easy" on him if he confessed) (10th Cir. 2005). "Under Supreme Court and Tenth Circuit precedent, a promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced." *Clanton v. Cooper*, 129 F.3d 1147, 1159 (10th Cir.1997) (citing cases). The fact that an officer promises to make a defendant's cooperation known to prosecutors will not produce a coerced confession. *See United States v. Roman-Zarate*, 115 F.3d 778, 783-84 (10th Cir. 1997) (citing cases). When combined with other factors, however, promises of leniency can be sufficiently coercive to render a confession involuntary. Such was the case in *United States v. Lopez*, 437 F.3d 1059 (10th Cir. 2006).

In *Lopez*, FBI agents interviewed the defendant a number of times regarding a murder that occurred on an Indian reservation in Colorado. Initially, Lopez denied having anything to do with the crime, but he eventually confessed to the agents during a second interview. Prior to the confession, one of the agents presented alternative scenarios to Lopez and explained to him the difference between murder and manslaughter. As part of that explanation, the agent said that one of the acts involves a "mistake" instead of an intentional act. The agent took the extra step of writing down the words "60" and "6" on separate pieces of paper

to illustrate the difference between a killing by mistake (6 years in prison) and an intentional murder (60 years in prison). The agent then told him "if you cooperate, you know . . . you could be looking at six years. And if you don't cooperate and give us answers, you could be looking at 60 years." *Id.* at 1061. The FBI agent also told Lopez about a murder case where some of the suspects who had cooperated had received less time than the suspects who had not cooperated. According to the agent, the suspects in that other case were "treated leniently" because the crime had been a mistake. *Id.* After hearing the agent's explanation and observing the choices of "6" and "60" years in prison on the papers, a crying Lopez told the interrogating agents that he had shot the victim by mistake. *Id.* at 1062. For the next two hours, Lopez gave the agents the details about the shooting. All the while, Lopez cried and would "go in and out of sobbing," as he confessed. The interview which produced the confession lasted almost four hours. *Id.* The district court granted Lopez's motion to suppress the statements finding them to be the product of illegal police coercion and that they were made involuntarily. *Id.* at 1060.

In addition to the promise of leniency, the court found that the federal agents also misrepresented and exaggerated the evidence they had against Lopez. *Id* at 1064. The Tenth Circuit determined that the agents' misrepresentation of the evidence against Lopez, together with Agent Hopper's promise of leniency to Lopez if he confessed to killing Box by mistake, are sufficient circumstances that would overbear Lopez's will and make his confession involuntary.

*Lopez,* however, is factually distinguishable from the instant case. Here, Agent Dunn did not offer alternative sentencing scenarios to Defendant depending on the crime to which Defendant confessed. Dunn did explain the mandatory minimum statutory sentencing system for robberies of multiple pharmacies, but he never specifically advised Defendant what minimum

sentence he would receive. Instead, Dunn told Defendant that he could potentially talk with the prosecutor's office and inform them if Defendant accepted responsibility. Thus, Dunn merely made vague promises to make Defendant's cooperation known to the prosecutor if Defendant told the truth. *See Lopez*, 437 F.3d at 1065 (holding that courts condone vague and non-committal promise as well as promises to make the defendant's cooperation known to the United States Attorney); *see also United States v. Lewis*, 24 F.3d 79, 82 (10th Cir. 1994) (holding that promises of leniency of "limited assurances" are a permissible interrogation tactic); *United States v. Glover,* 104 F.3d 1570, 1582 (10th Cir. 1997) (finding that promise to bring defendant's cooperation to the court's attention was not coercive). Importantly, Dunn never misrepresented or exaggerated the evidence against Defendant during the interview.

Finally, the videotape in this case shows that the totality of the circumstances here were much different than those described in *Lopez*. Defendant's statements were not coerced. The interview is relatively short in duration, the agents are calm and respectful, the officers leave the room to give Defendant some time to think on his own, and the conditions of the room are comfortable. Furthermore, Defendant confessed to aiding and abetting in the robberies on his own terms early on in the interview–prior to the vague statements concerning leniency for cooperating. Agent Dunn only pressed Defendant on his story about the July 13 robbery and gave him a reality check as to the type of crime that he was involved in, when Defendant continued to give inconsistent details about what happened. And, even after Dunn confronted Defendant about the inconsistencies in his story, Defendant never admitted to actually entering the pharmacy with Shawn Dubarry on July 13–despite other evidence to the contrary. Thus, even assuming *arguendo*, that Dunn did make inappropriate promises of leniency in this case, no

9

fruit was produced as a result of it.

## CONCLUSION

Based on the above reasoning, IT IS HEREBY ORDERED that Defendant's Motion to Suppress [Docket # 96 ] is DENIED.

DATED this 10th day of May, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge